**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **WANDA ROLON, PABLO A. ORTEGA, and the MARITAL PARTNERSHIP COMPRISED BETWEEN BOTH** | CIVIL NO.   10-2018 (       ) |
| | DEFAMATION AND SLANDER |
| **PLAINTIFFS** | |
| **vs.** | |
| **UNIVISION TELEVISION GROUP, INC.** | |
| **DEFENDANT** | |

## <u>AMENDED COMPLAINT FOR DECLARATORY RELIEF</u>

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs, Wanda Rolón and Pablo A. Ortega, through the undersigned attorneys and very respectfully aver and pray as follows:

### I.   <u>JURISDICTION AND VENUE</u>

1.  This Honorable Court has jurisdiction over the subject matter in the captioned case pursuant to 28 U.S.C. § 1332, inasmuch as the Plaintiffs were the subject of defamation, which is proscribed under Section 8 of the Constitution of the Commonwealth of Puerto Rico, P.R. Const. Art. II §8; the Libel and Slander Act of 1902, 32 P.R. Laws Ann. §3141-3149; and, Article 1802 of the Puerto Rico Civil Code, 31 P.R Laws Ann. § 5141; the controversy involves citizens of different states; and the amount in controversy exceeds $75,000.00, exclusive of costs and interests.

1

2.  Venue lies properly in this United States District Court for the District of Puerto Rico, since the facts alleged in the Complaint occurred in Puerto Rico, and the controversy is between two citizens of the Commonwealth of Puerto Rico and a corporation, which is a citizen of the State of New York.

## II. THE PARTIES

3.  Plaintiff Wanda Rolón is of legal age, married, a pastor, and resident of Dorado, Puerto Rico, (hereinafter referred to as "Plaintiff Rolón").  Plaintiff Rolón is the principal pastor of "Tabernáculo de Alabanza y Restauración La Senda Antigua," a church located in the Municipality of Toa Alta, Puerto Rico.  Plaintiff Rolón provides spiritual guidance and support to the members of her religious congregation.

4.  Plaintiff Pablo A. Ortega is of legal age, married to Plaintiff Rolón, a pastor, and resident of Dorado, Puerto Rico (hereinafter referred to as "Plaintiff Ortega").  Plaintiff Ortega also serves as a pastor in the church noted in paragraph 3 above.

5.  Upon information and belief, Defendant Grupo de Television Univisión on or Defendant Univision Television Group, Inc. (hereinafter "GTU") is a corporation organized under the laws of the State of New York, with its principal place of business in New York City, New York.  Upon information and belief, Defendant GTU is the parent company, owner and operator of various subsidiaries in Puerto Rico, including WSUR-TV Channel 9 and WLII-TV Channel 11.  These two stations, WSUR-TV 9 and WLII-TV 11, aired various news reports on "Las Noticias Univisión a las 6," in which the captioned Plaintiffs were defamed and slandered and their constitutional rights infringed upon.

6.  Upon information and belief, Defendant UGT instructs and establishes the policy, guidelines, and principles of all its subsidiaries television stations in Puerto Rico and provides training for, supervises, and oversees the proper implementation of same.  Defendant UGT has full control, domination and tutelage of the programs aired on WSUR-TV Channel 9 and WLII-TV Channel 11, broadcasting considerations, and the broadcasting of defamatory and slanderous information.

### III. <u>FACTS COMMON TO ALL CAUSES OF ACTION</u>

7.  In September 2010, Defendant GTU, as the parent owner of WSUR-TV Channel 9 and WLII-TV Channel 11, broadcasted  "Las Noticias Univisión a las 6" (hereinafter "Las Noticias"), which is a prime time evening television news program between the hours of 6:00 PM and 6:30 PM.  Las Noticias is hosted by anchor persons Cid Marie Fleming, Carlos Webber, and Ramón Enrique Torres along with investigative reporter Yolanda Vélez-Arcelay (hereinafter " Reporter Vélez-Arcelay").   Las Noticias is broadcasted throughout Puerto Rico, certain states in the United States, and worldwide through the internet.

8.  On September 27, 28, and 29, 2010, Las Noticias broadcasted an investigative report titled "Repay to Cesar What Belongs to Cesar" which was produced by Reporter Vélez-Arcelay.

9.  On September 27, Reporter Weber stated that Las Noticias **had obtained evidence** that certain religious leaders, under the mantel of sanctity, where utilizing funds which had been contributed by the members of their religious congregations for political campaign purposes and without the authorization of their worshippers.  Reporter Vélez-Arcelay also viciously defamed and slandered Plaintiff Rolón **by tying her to a group of three other religious leaders whose names appeared on the internet as being actively engaged in politics at the**

expense of their congregations[1].  Further, during the transmission of Las Noticias an unknown person stated that the religious leaders where illegally utilizing monetary contributions from the  members of their religious congregations for political campaign purposes in violation of Puerto Rico electoral laws notwithstanding the tax exempt status enjoyed by their religious organizations.  **The comments elicited suggested that religious leaders engaged in illegal money laundering activities, which are proscribed under Article 228 of the Penal Code of Puerto Rico.** [2]

10.  According to reporter Vélez-Arcelay, the names of all four reverends were featured in a storyboard posted in the internet which showed that they were actively involved in politics and were members of the organization "Mission of United Evangelicals in Action" (hereinafter "United Evangelicals").  The objective of the United Evangelicals was to collect monetary contributions on behalf of certain political candidates and endorse their candidacies amongst the members of their respective religious congregations.  It was further alleged that United Evangelicals operated as a political action committee.

11.  Reporter Vélez-Arcelay engaged in a repeated pattern of willful and malicious defamatory persecution against Plaintiff Rolón despite the reporter's personal knowledge that she lacked direct or indirect evidence linking Plaintiff Rolón to illegal political campaign contributions.  It is worth noting that Reporter Vélez-Arcelay examined the files maintained by the State Elections Committee in her quest to uncover damaging, slanderous information which would connect Plaintiff Rolón to illegal political campaign contributions.  Specifically, Reporter

---

[1] The three other religious leaders were Jorge Raschke, Rodolfo Font, and Enrique Rosado.

[2] An English translation of Article 228 contained in the Penal Code of Puerto Rico will be submitted to the Court.

Vélez-Arcelay stated that she had reviewed the referenced files in an attempt to corroborate whether or not political parties in the Island had received financial assistance from United Evangelicals.  However, **Reporter Vélez-Arcelay's search of the files revealed that neither Plaintiff Rolón nor United Evangelicals had donated funds to any of the political parties in Puerto Rico.  Furthermore, the State Elections Commission Electoral Auditor corroborated that United Evangelicals was not listed as a registered political action committee[3] and, consequently, United Evangelicals could not have reported campaign contributions during the last general elections.**  Notwithstanding this, Reporter Vélez-Arcelay continued the vicious defamatory and slanderous attacks against Plaintiff Rolón by suggesting that she had used funds from her church, a tax exempt organization, for political purposes.

12.  Reporter Vélez-Arcelay also engaged in a **defamatory media tour** against Plaintiff Rolón and Plaintiff Ortega by linking Plaintiff Rolón to United Evangelical.

13.  On September 28, 2010, Reporter Vélez-Arcelay was interviewed by commentator Luis F. Ojeda, who hosts a radio program in WKAQ 580 which is broadcasted throughout Puerto Rico.  During the radio programming Reporter Vélez-Arcelay linked again Plaintiff Rolón to United Evangelicals and described the organization as one which collected money on behalf of and endorsed political candidates amongst their respective religious congregations.  It is worth

---

[3] *Reporter Velez-Arcelay stated that, according to Article 3.037 of the Electoral Law of Puerto Rico, a "political action committee" is defined as a group of persons or organizations which receive or collect funds for political campaigns.  Reporter Velez-Arcelay added that, pursuant to Article 3.019, a political action committee is required to be registered at the State Elections Committee.*

noting that, upon information and belief, WKAQ 580 is part of the Univision Television Group family.

14.  The September 28 broadcast described Plaintiff Rolón as one of the most charismatic leaders within the evangelical movement and that her ministry had achieved great successes such as a television station, a magazine, buildings, and "drive-thru prayer centers." Reporter Vélez-Arcelay questioned Plaintiff Rolón why she had posed along with other religious leaders in a storyboard which had been posted in the internet as noted above.  According to Reporter Vélez-Arcelay, the picture featured in the storyboard appeared to be a political action committee which was not registered in the State Elections Committee as required by law. Reporter Vélez-Arcelay noted again that the storyboard posted in the internet stated that the monetary contributions pledged by the members of its religious congregation would be used to support political candidates in return for legislation of interest; in other words, a *quid pro quo* arrangement.

15.  Reporter Vélez-Arcelay made a mockery of Plaintiff Rolón by commenting on Plaintiff's Rolón lack of situational awareness about the referenced storyblog and picture posted in the internet.  Reporter Vélez-Arcelay's manifest, vicious attacks against Plaintiff Rolón continued even after Plaintiff Rolón herself explained to the reporter that the concerned picture had been taken in 2001 on occasion when several pastors offered themselves to pray on her behalf prior to liver transplant surgery. **It is worth noting that Plaintiff Rolón actually underwent liver transplant surgery a few days after the picture was taken.**

16.  The character assassination continued on September 29, 2010, when Las Noticias Reporter Ramón Enrique Torres alluded to Reporter Vélez-Arcelay's investigation in which

United Evangelicals was depicted as collecting money for political campaign in violation of the law.[4]

17. The Constitution of the Commonwealth of Puerto Rico protects Plaintiffs' private life against abusive attacks and the type of character assassination they endured. To that effect, Section 8 of the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico provides, "*[e]very person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life*." *See* P.R. Const. Art. II § 8.

18. Undoubtedly, Las Noticias aired defamatory and slanderous remarks against Plaintiff Rolón. Such comments were made with the intention of instilling in the minds of the public and in the minds of the members of Plaintiff's congregation hatred, contempt, despise, and disbelief as well as to dishonor, humiliate, and discredit Plaintiff Rolón in a public forum. Likewise, the defamatory comments intended to deprive Plaintiff Rolón of the benefit of public confidence and social interaction.

19. The above vicious, ill-intended investigative report aired on Las Noticias caused damages to Plaintiff Rolón, who is the principal pastor of her church. The defamatory comments were like an explosion aimed at destroying and discrediting her honor and reputation. Moreover, the defamatory comments were meant to inculcate a sprouting seed of hate and disbelief within Plaintiff Rolón's parishioners and the general public; harming not only Plaintiff Rolón herself, but also Plaintiff Ortega and her church.

---

[4] The Plaintiffs have requested certified English translations of the various broadcast interviews and copies of relevant excerpts which will be furnished to the Court upon receipt of the translations.

20.  The vicious, ill-intended comments also caused damages to Plaintiff Ortega who has always lived a private life outside of the public spotlight, and suddenly was forced to endure the smear campaign against his spouse, Plaintiff Rolón

21.  The comments against Plaintiff Rolón were knowingly false and defamatory. Further, the comments were willfully and wantonly elicited with the intention to vilify, humiliate, and defame Plaintiff Rolón.  Moreover, the defamatory comments infringed Plaintiffs constitutional rights to live a life free of abusive attacks against their honor, reputation and their private and family life.

22.  Some of the defamatory comments were simultaneously broadcasted on live television and the nature, contents, and intentions of broadcasts were known, or should have been known, and endorsed by Defendant GTU.

23.  Defendant GTU authorized and exercised control over the broadcasting of the defamatory comments against Plaintiffs in Las Noticias.  Likewise, Defendant GTU irresponsibly endorsed the nature and purpose of the program, and knew, or should have known, the contents of the defamatory reports and the adverse consequences that such reports would cause to Plaintiffs.

24.  In sum, the defamatory comments broadcasted in Las Noticias were egregiously false and subjected Plaintiffs to public hatred, contempt, and dislike.

**IV. <u>REQUEST FOR DECLARATORY RELIEF TO ENABLE THE SUPREME COURT OF PUERTO RICO TO ESTABLISH A JUDICIAL PRESUMPTION WHICH WOULD SHIFT THE BURDEN OF PROOF IN DEFAMATION CASES</u>**

25.  All averments, statements and allegations contained in paragraphs 1 to 24 above are incorporated by reference as if fully set forth herein.

26.  Defendant GTU's knew or should have known that the investigation reports conducted by Reporter Vélez-Arcelay, and which were broadcasted in Puerto Rico, the United States, and worldwide through the internet, were totally misleading and false as they related to Plaintiff Rolón and Plaintiff Ortega.  Notwithstanding, GTU aired, allowed to be aired, or caused to be aired, known false information prejudicial to Plaintiffs or in a manner consistent with reckless disregarding for the truth of the matters asserted.

27.  In Puerto Rico, slanderous conduct is expressly proscribed both constitutionally and statutorily.  With respect to the right of freedom of speech and press, Section 4 of Article II of the Constitution of the Commonwealth of Puerto Rico Constitution provides in part that "*[n]o law shall be made abridging the freedom of speech or of the press . . .*" Further, Section 8 of the Constitution establishes, on the other hand, that "*[e]very person has the right to the protection of law against **abusive attacks on his honor, reputation and private or family life**.*" (Emphasis added.)

28.  Further, the statute enacted on February 19, 1902, and which is codified in Title 32 of the Laws of Puerto Rico Annotated, Sections 3141-3149, establishes a generic action for damages caused by defamation, which may present itself in the form of "libel" or "slander."[5] The term **"defamation"** is defined as the discrediting of a person by publicly disclosing matters which affect the person's reputation.[6]  **"Libel"** requires the existence of a **permanent record** which captures the defamatory expression, whereas **"slander"** is configured when a defamatory **verbal expression** is elicited.

---

[5] Villanueva v. Hernández, 128 D.P.R. 618 (1991).
[6] Vélez v. García Passalacua, 163 D.P.R. 223 (2004).

29.  In defamation actions, either in the form of libel or slander, the complainant bears the burden of proof that he or she was defamed.  If the complainant is a public figure, he or she would also have to establish that the **information transmitted was actually false, involving real malice, and with grave disregard for the truth of the matter asserted**.  On the other hand, in defamation actions involving private persons, the complainant must prove that **the information transmitted about his or her person was false and disseminated in a negligent fashion**.  In either case, public or private figures, the complainant must also establish that **the dissemination of the concerned information actually caused real damages to his or her person**.

30.  In Puerto Rico, protection against defamatory expressions enjoys constitutional ranking.  As previously noted, Sections 4 and 8 of the Constitution of Puerto Rico consecrate the rights of freedom of speech, the press, privacy, honor, reputation, and private life.

31.  Moreover, Section 8 consecrates the only constitutional right which is private in nature and enjoys an affirmative character inasmuch as it operates ***ex propio vigore*** **without requiring the enactment of neither special legislation nor any action on the part of the State ("state action")**.  In sum, the Constitution of Puerto Rico categorically establishes that two private persons should not defame each other or otherwise engage in defamatory conduct.

32.  The protection afforded under Section 8 of the Constitution of Puerto Rico is distinctly different as well as broader in scope than the protections contained in the Constitution of the United States.  While Section 8 of the Constitution of Puerto Rico expressly provides an affirmative constitutional right to the dignity, reputation, honor, and private life of

10

a person, the Constitution of the United States is devoid of a similar constitutional protection which private persons may avail themselves of.

33.  In light of the fact that Section 8 provides an outward and affirmative right which may be opposed between private persons, the Supreme Court of Puerto Rico ought to **afford different treatment to all other constitutional rights contained in the Constitution of Puerto Rico**.  This is exactly the novel situation which the captioned Plaintiffs very respectfully bring to the attention of this Honorable Court in an effort for this Court to grant declaratory relief as further set forth below.

34.  The novel situation consists in that in defamation cases a presumption ought to be established whereby the defendant would bear the burden of proof.  In other words, that the person who elicited defamatory comments be required to prove that the information disseminated was neither false, nor defamatory, and that it involved neither negligence nor real malice, as the case may be.

35.  The Civil Code of Puerto Rico provides relevant guidance in cases such as the present action by acknowledging the formulation of presumptions which are not established by law or which the court would otherwise consider appropriate.

36.  Article 1205 of the Civil Code of Puerto Rico provides that "*[i]n order that presumptions not established by law may be admitted as means of evidence, it is indispensable that between the fact demonstrated and the one it is desired to deduce there should exist a precise and direct connection <u>according to the rules of human judgment</u>*." 31 L.P.R.A. Sec. 3344 (Emphasis added.)

37.  Likewise, Rule 110(A) of the Puerto Rico Rules of Evidence of 2010 provides that the burden of proof falls on the non-prevailing party if no evidence is presented by any other party.

38.  On the other hand, Rule 302 of the Puerto Rico Rules of Evidence of 2010 provides relevant guidance regarding the effect of presumptions in civil cases.  This rule places on the party against whom the presumption is imposed the burden of going forward with evidence to demonstrate the nonexistence of the presumed fact.[7]  Thus, the party against whom the presumption is imposed will be required to produce evidence, or otherwise the trier of fact can accept the existence of the presumed fact.[8]  Enumerated below are some practical considerations outlined by the Supreme Court of Puerto Rico which would authorize the creation of a judicial presumption by shifting the burden of proof upon the defendant:

> *First, anyone wanting to prove a fact—such as negligence or real*
>
> *malice—by means of a legal presumption, has to demonstrate the fact or facts*
>
> *from whence deduction is made of that which is presumed. Art. 1202 of the Civil*

---

[7] Regarding the effect of presumptions in civil actions, Rule 302 of the Puerto Rico Rules of Evidence reads as follows: "*[i]n a civil action, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to demonstrate the inexistence of the presumed fact. If the party against whom the presumption is directed fails to demonstrate the inexistence of the presumed fact, the trier of fact should accept the existence of said fact. If, however, the party demonstrates the inexistence of the presumed fact, the opposing party interested in rebutting the presumption bears the burden of persuading the trier of fact that it is more probable than not the inexistence of the presumed fact.*" (Unofficial translation.)

[8] Judicial presumptions are permissible in light of the rational operation that lies beneath the inference of negligence from the act of defamation; which is an evidentiary deductive exercise.  By means of prima facie evidence, deduction may be made, from a given event, of a causal relation with the result that came about, or from the result that came about, deduction may be made of a certain given event to be the cause.  This evidence leads, solely on the basis of the circumstances, to make it appear as if the facts, pursuant to the general experience of the life of the events, were proven, making it superfluous for the party that has the burden of demonstration of proof and obligated to meet this procedural burden from having to do so.  *See*, Admor. F.S.E. v. Almacén Ramón, 151 D.P.R. 711, 728-729 (2000).  Citing Pueblo v. Vázquez Méndez, 117 D.P.R. 170, 176 (1986).  *See also*, *The Judicial Presumptions and the Doctrine of Res Ipsa Loquitur*, 31 Rev. Der. Pur. 55 (1991), for a broader analyses regarding the scope of judicial presumptions under Article 1205 of the Civil Code of Puerto Rico.

*Code*, 31 L.P.R.A. sec. 3341.  Thus, the presumption is not arbitrary, but takes off from grounded premises.

Second, the link between the demonstrated fact and the one that is to be presumed must come about "according to the rules of human criteria," Art. 1205 of the Civil Code, supra, which in turn are derived from "the maxims of common experience as to how facts occur in practical reality..."[9]

Third, the application of a legal presumption that must plainly be derived is not left to the entire will of the judge.  Hence, prima facie evidence must lead to the formation of a presumption, not a mere inference.  Thus any vagueness that may lead it to be merely permissible in character is cured.  An error by the judge upon raising or omitting a presumption could be reviewable under the same criterions for error in the appreciation of the evidence. [10]

Fourth, the link disappears when countervailing evidence is produced. The defendant then is no longer subject to absolute liability, but is rather obligated to exonerate him or herself by producing sufficient evidence to refute the logical tie leading to the presumption of the fact in question." [11]  *See*, <u>Admor. F.S.E. v. Almacén Ramón</u>, 151 D.P.R. 711, 729-730 (2000) (Translations ours).

---

[9] M. Serra Domínguez, *Comentarios al Código Civil y Compilaciones Forales,* (M. Albaladejo, Comp.), 2nd ed., Madrid, Ed. Rev. Der. Privado, 1991, T. XVI, Vol. 2, Sec. 6ta, p. 787.
[10] *Id* at p. 789.
[11] Citing, <u>Admor. F.S.E. v. Almacén Ramón</u>, *Id* at p. 729-730.

39.  Based on the foregoing legal sources, it is evident that judicial presumptions are permissible and that it would be within the purview of the Supreme Court of Puerto Rico to address them via a Writ of Certification.

40.  Unlike criminal cases, no constitutionally ranked presumptions exist in civil cases. Consequently, in civil cases such as ours, there is no danger of transgressing constitutional protections (i.e., presumption of innocence) if the Supreme Court of Puerto Rico establishes a judicial presumption shifting the burden of proof to the defendant.  Local legal commentators have stated that a judicial presumption which shifts the burden of proof to the defendant is legally plausible and/or mandatory.[12]

41.  Further, a Declaratory Judgment is the appropriate legal tool by which this Honorable Court is empowered to address novel legal questions such as the one addressed herein.  Rule 57 of the Fed. R. Civ. Proc. is the vehicle that applies the Fed. R. Civ. Proc. to declaratory relief actions authorized under 28 U.S.C. § 2201.   Rules 57 reads as follows:

> *"These rules govern the procedure for obtaining a declaratory judgment under **28 U.S.C. § 2201.** Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action."*  Rule 57 Fed. R. Civ. P. (Emphasis added)

On the other hand, 28 U.S.C. § 2201 provides in part as follows:

---

[12] *See*, R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, First Ed., San Juan, Ed. Situm, 1994, p. 128.

*(a)  In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action any court of the United States, upon the filing of an appropriate pleading involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority*, **any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.**

> . . . (Emphasis added). "

42.  Rule 57 provides for court judgment prior to the time that the parties have suffered all of their damages or losses; that is, before all possible coercive remedies might be available. In other words, a Declaratory Judgment allows the court to make a binding adjudication of rights and status of civil litigants regardless of whether claims for damages or injunctive relief have arisen or would otherwise need to be tried in the future.  Further a request for declaratory relief may be rendered ***sua ponte*** by the court if it finds that the coercive remedies are

inappropriate or unavailable, or the relief requested will serve a useful purpose in resolving the controversy.  10 *Bender's Federal Practice Forms Comment of Rule 57.*[13]

43.  Moreover, we should stress that, from a procedural point of view, a request for declaratory relief is indistinguishable from all other ordinary civil actions. For example, in a Declaratory Judgment the parties may utilize all discovery methods provided for in the Rules of Civil Procedure.

44.  In light of the fact that there are competing interests among the parties in the captioned case, it is, thus, appropriate for this Court to entertain the Plaintiffs' request for Declaratory Judgment.

---

[13]   Rule 59.1 of the Civil Procedure Rules of Puerto Rico also enables the parties to seek declaratory relief.  The rules provides that the Court of First Instance shall have the authority to:

> *"[T]o declare rights, status and other legal relationship, even though another remedy is or may be instigated. The fact that a declaratory judgment or decree has been requested shall not be deemed sufficient motive to challenge any action or proceeding. The declaration may be either affirmative or negative in form and effect and shall have the force and effect of final judgments or resolutions.*
> *Despite the language contained in Rule 37, the court may order a speedy hearing of an action for a declaratory judgment giving it preference in the calendar."*  (Emphasis added).

Further, Rule 59.2 enables an interested person to petition the Court to grant a declaratory relief.  The relevant portion of the rule reads as follows:

> *"Every person interested in a deed, will, written contract or other document constituting a contract, or whose rights, status or other legal relations are affected by any statute, municipal ordinance, contract or franchise may apply for a decision on any difference in the construction or validity of said statutes, ordinances, contract or franchise, and also a declaration of rights, status or other legal relations derived there from. A contract may be construed before or after noncompliance thereof." (Emphasis added).*

The Supreme Court of Puerto Rico established early on that through a Declaratory Judgment the Court can outline or assert the rights to which the parties may be entitled in anticipation of a legal action.  As long as there is a real controversy the Court will usually agree to examine the request for relief prayed by the petitioner.  *See*, <u>Moscoso v. Rivera</u>, 76 D.P.R. 481 (1954).

45.   Interestingly, in defamation cases the plaintiff bears the burden of proof notwithstanding when he or she enjoys a constitutionally protected right which is undoubtedly superior to any other rights that the defendant may be entitled by fiction of law.  Based on the foregoing scenario, we are compelled to bring to the attention of this Court the following issue which never before has been considered by this Court or by the Supreme Court of Puerto Rico: Why is it that the plaintiff, and not the defendant, is required to prove that he was the subject of defamation when he or she is otherwise vested with a uniquely protected constitutional right which operate *ex propio vigore* specifically enacted to protect him or her from vicious attacks against his or her honor, reputation, privacy, and human dignity?

46.   Evidently, there is a dichotomy between the plain, unambiguous language contained in the Constitution of Puerto Rico and the means by which local courts seem to enforce constitutionally protected rights.  Do the protections contained in the Constitution truly enjoy a superior ranking or hierarchy *vis a vis* the statutory rights which may be owed a defendant who engaged in defamatory behavior?  Are constitutional protections actually enforceable inasmuch as the current judicial practice in the local courts of Puerto Rico impedes for all practical purposes for the plaintiff to avail him or herself of said constitutionally protected rights?  Quite the opposite, the standing judicial practice imposes an affirmative obligation on the plaintiff to present evidence to successfully rebut the statutory rights afforded to the defendant.

47.   Based on the foregoing, the captioned Plaintiffs respectfully raise this novel issue before this Honorable Court since it would make more sense for them to not be compelled to prove that they were harmed by Defendant GTU's defamatory remarks in light of Plaintiffs'

constitutional rights, which were enacted to shield Plaintiffs from vicious attacks to their honor, reputation, privacy, and human dignity.  In other words, it would make more sense if Defendant GTU, who only enjoys a statutory right, is required to prove that it did not engage in defamatory conduct as opposed to initially imposing an obligation on the Plaintiffs of proving that their constitutional rights were infringed.

48.  The answer to the above-noted question is relatively simple.  Pursuant to the current state of law in the jurisdiction of Puerto Rico, in defamation cases the plaintiff bears the burden of proving that he or she was defamed since the judicial standards which have been developed on this subject were imported from other jurisdictions in the mainland which only afford a purely statutory protection.  Undoubtedly, this falls short of the constitutionally protected right contained in the Constitution of Puerto Rico.  Inasmuch as our jurisdiction adopted doctrines from other jurisdictions on the subjects of defamation, libel, and slander-- which are statutorily protected and cannot be opposed between private parties--these doctrines inevitably present a challenge to our judicial system.

49.  Based on the foregoing legal analysis and the facts and issues presented herein, the Plaintiffs respectfully believe that the Declaratory Judgment is the appropriate procedural mechanism by which this Court could vindicate the protections afforded to persons under the Constitution of Puerto Rico.  If this Court grants the declaratory relief and further certifies through a Writ of Certification the presumption issue noted above to the Supreme Court of Puerto Rico, the latter would be empowered to articulate the specific applicability of presumptions as they relate to defamation cases pursuant to the novel legal situation presented herein.

50.  The Plaintiffs believe that the Supreme Court of Puerto Rico would be in a unique position in adjudicating the issue of presumption as it applies to defamation cases if this Court grants the Plaintiffs' request for declaratory relief.  Based on the Plaintiffs' legal theory, it would be patently unfair for the Plaintiffs to bear the burden of proving that they were defamed by Defendant GTU; particularly when the Plaintiffs are owed a constitutional protection; to wit, the right of privacy, honor, and reputation.

51.  Based on the foregoing, the captioned Plaintiffs respectfully request from this Honorable Court that, in light of the solemn constitutional rights involved in this case, to declare the respective rights and duties of the parties in this matter and that the matter concerning the applicability of presumptions in defamatory cases be certified to the Supreme Court of Puerto Rico through a Writ of Certification prior to the final adjudication of all claims brought before Honorable Court.

52.  The Plaintiffs reserve the right to amend the present cause of action as circumstances may warrant.

## V.  FIRST CAUSE OF ACTION: SLANDER, SLANDER *PER SE*, AND DEFAMATION

53.  All averments, statements and allegations contained in paragraphs 1 to 52 above are incorporated by reference as if fully set forth herein.

54.  In Puerto Rico, a cause of action for defamation and slander is regulated under: (1) the Bill of Rights contained in the Constitution of the Commonwealth of Puerto Rico; (2) the Libel and Slander Act of 1902; and (3) Article 1802 of the Puerto Rico Civil Code.

55.  Plaintiff Rolón acknowledges that she is a public figure.  Consequently, the applicable legal criterion in support of Plaintiff Rolón's cause of action against Defendant GTU is

that the latter maliciously allowed the broadcasting of the defamatory, slanderous, and libelous investigative report with full knowledge of the falsity of the contents of the report which was aired on Las Noticias and other public forums or by recklessly disregarding the truthfulness of the information broadcasted.  In other words, that Defendant GTU would be held liable to Plaintiff Rolón if the latter establish that Defendant GTU knowingly transmitted or broadcasted false information about Plaintiffs or that it recklessly disregarded the truthfulness of the information aired on Las Noticias.

56.  With respect to Plaintiff Ortega, he is not a public figure, but rather a private person inasmuch as he has never been known to be actively involved in politics nor makes appearances in any televised or radio programming to discuss subjects of public interest.  Therefore, Plaintiff Ortega's cause of action against Defendant GTU is premised in that the latter negligently allowed the broadcasting of the defamatory, slanderous, and libelous investigative report.

57.  The defamatory and injurious investigative reports conducted by Reporter Vélez-Arcelay, which were aired on Las Noticias and other public forums, accused Plaintiff Rolón of utilizing funds which had been donated by the members of her religious congregation for political campaign purposes and without the authorization of their worshippers.  **The reports per se were slanderous and defamatory since Defendant GTU maliciously and with reckless disregard for the actual truth asserted that Plaintiff Rolón belonged to a religious organization (United Evangelicals) which illegally circumvented the law by donating tax exempt money to politicians.  In other words, the reports suggested that Plaintiff Rolón engaged in illegal money laundering to benefit local politicians.**

20

58. Defendant GTU's maliciousness towards Plaintiffs is further supported by Reporter Vélez-Arcelay's continued smear campaign against Plaintiff Rolón.  Reporter Vélez-Arcelay's hatred towards Plaintiff Rolón was such that moved **the reporter to engage in a media tour for several days for the sole purpose of discrediting Plaintiff Rolón by depicting her as a member of a political action committee (United Evangelicals) which funneled money to politicians in violation of Puerto Rico Electoral Laws.**   Moreover, Defendant GTU's malice and reckless disregard for the truth is apparent after **Plaintiff Rolón herself explained to Reporter Vélez-Arcelay that she was not involved in any activity associated with illegal campaign contributions.**   Likewise, Defendant GTU malice and reckless disregard for the truth is evident after **Reporter Vélez-Arcelay continued her campaign of persecution against Plaintiff Rolón notwithstanding the fact that the search of records at the State Elections Commissions did not reveal any wrongdoing on the part of Plaintiff Rolón or United Evangelicals.**

59. The defamatory and slanderous statements broadcasted on prime time television throughout Puerto Rico to thousands or millions of viewers are blatantly false as they pertain to Plaintiffs.  These statements were broadcasted with deliberate malice to falsely harm Plaintiffs' reputation, honor, and private lives negligence or reckless disregard for the truth of the matter asserted.  Defendant GTU had actual knowledge of, or should have had knowledge of, the content of the defamatory, slanderous, and libelous comments broadcasted and allowed or condoned their broadcasting by reckless disregarding the truth of the matters asserted in Las Noticias.  Moreover, Defendant GTU failed to exercise control over the continuous, abusive attacks and defamatory remarks elicited against Plaintiff Rolón to effectively halt such repeated defamatory comments and injurious attacks.

21

**60.  Defendant GTU had full control, domination and tutelage and/or assumed responsibility over issues regarding privacy considerations in their broadcasting as well as over the defamatory and libelous information aired on Las Noticias.  Defendant GTU allowed and endorsed the defamatory comments not only in the first program aired on September 27 and 28, 2010, but also actively encouraged Reporter Vélez-Arcelay to continue her media tour to harm Plaintiffs' reputation.**  Further, Defendant GTU failed to supervise personnel of its subsidiaries WSUR-TV Channel 9 and WLII-TV Channel 11 which broadcasted the false, defamatory, and slanderous investigative reports with deliberate indifference to Plaintiffs' constitutional rights.

61.  Defendant GTU and Reporter Vélez-Arcelay were aware of Plaintiff Rolón's prominent position within her church and of the damaging effects that the defamatory investigative report would cause to Plaintiff Rolón's reputation, credibility, standing, and trustworthiness within her religious congregation.

62.  The slanderous investigative report against Plaintiffs was aired with full knowledge of the falsity of the information transmitted, reckless disregard for its falsity, without any factual basis for the information transmitted, and with the specific intent to cause substantial harm to the Plaintiffs' reputation, honor, and private lives.  In sum, the broadcasting of the defamatory and slanderous investigative report is tantamount to actual malice on the part of Defendant GTU.

63.  The defamatory comments broadcasted are the proximate cause of Plaintiffs' damages.  Plaintiff's Rolón reputation has been shredded to pieces.  As a result of the slanderous and defamatory comments, many worshippers have left Plaintiff Rolón's church.

22

Further, Plaintiff Rolón will now have to spend several years rebuilding her reputation, honor, and the trust within her congregation.

64.  The Plaintiffs have experienced shame, embarrassment, and humiliation as a direct result of the false, slanderous, and defamatory investigative report aired on Las Noticias. Further, Plaintiffs' honor, dignity, and reputation have been seriously destroyed inasmuch as Plaintiffs have been unfairly exposed to the hatred, contempt and ridicule of the general public and of their parishioners.

65.  The reports broadcasted on Las Noticias are blatantly false, injurious, defamatory, insulting and with clear disregard for the truth. The defamatory reports were aired on television, which is one of the most effective and widespread means of communication, with the specific purpose of defaming and destroying Plaintiffs' reputation, honor, and dignity, and to attack Plaintiffs' private and family life.

66.  As noted earlier, Defendant GTU, is the parent company, owner and operator of various subsidiaries, including WSUR-TV Channel 9 and WLII-TV Channel 11.  Defendant UGT instructs and establishes the policy, guidelines, and principles of all its subsidiaries television stations and further provides training for, supervises, and oversees the proper implementation of same. Defendant UGT has full control, domination and tutelage over WSUR-TV Channel 9 and WLII-TV Channel 11 on issues related to compliance requirements for all Univision entities as well as over the programming, including the broadcasting of libelous and defamatory information.

67.  Defendant GTU, as the entity responsible for establishing and implementing policies on privacy considerations and the broadcasting of libelous and defamatory information, is liable

23

for its own actions and inaction with respect to the broadcasting of the defamatory comments against Plaintiffs.  Defendant GTU failed to exercise due care and prudence to stop and prevent the broadcasting of slanderous and defamatory comments.  Defendant GTU allowed the continuous vicious attacks against the Plaintiffs.

68.  Defendant GTU is also responsible for the actions and inactions of its subsidiaries, WSUR-TV Channel 9 and WLII-TV Channel 11, in connection with the broadcasting of the defamatory comments elicited against Plaintiff Rolón.  Further, Defendant GTU exerts control and domination over its subsidiaries, WSUR-TV Channel 9 and WLII-TV Channel 11, with regards to privacy considerations and the broadcasting of libelous and defamatory information.  WSUR-TV Channel 9's and WLII-TV Channel 11's broadcasting of the defamatory comments against Plaintiffs make Defendant GTU liable for the harm caused to Plaintiffs.

69.  Furthermore Defendant GTU, as owner of the Federal Communications Commission (FCC) license and owner of WSUR-TV Channel 9 and WLII-TV Channel 11, is responsible for the programs broadcasted in WSUR-TV Channel 9 and WLII-TV Channel 11.

70.  The Plaintiffs reserve the right to amend the present cause of action as circumstances may warrant.

## VI. SECOND CAUSE OF ACTION:

## DAMAGES UNDER ARTICLE 1802 OF THE PUERTO RICO CIVIL CODE

71.  All averments, statements and allegations contained in paragraphs 1 to 70 above are incorporated by reference as if fully set forth herein.

24

72.  Article 1802 of the Puerto Rico Civil Code provides where pertinent that "*[a] person who by act or omissions cause damages to another through fault or negligence shall be obligated to repair the damage so done*." <u>See</u> 31 P.R. Laws Ann. § 5141.

73.  Plaintiffs suffered damages as a result of Defendant GTU's maliciousness, negligence, and reckless disregard for the truthfulness of the information broadcasted on Las Noticias throughout Puerto Rico, the United States, and the world through the internet.

74.  Plaintiff Rolón's personal relationship with the members of her church has been damaged beyond repair due to Defendant GTU's actions.  Consequently, Plaintiff Rolón suffered, and continues to suffer, severe mental anguish, insomnia, and depression as a result of Defendant GTU's actions.

75.  Defendant GTU is liable for the damages caused to Plaintiff Rolón in an estimated amount at no less than $500,000.00. This amount will continue to increase on a daily basis until Defendant GTU rectifies the false information and defamatory comments elicited and apologizes for its reckless and destructive broadcasting practice.

76.  Plaintiff Ortega's personal relationship with the members of his church has been damaged beyond repair due to Defendant GTU's actions.  Plaintiff Ortega suffered, and continues to suffer, mental anguish, insomnia, and depression as a direct result of Defendant GTU's actions.

77.  Defendant GTU is liable for the damages caused to Plaintiff Ortega in an estimated amount of no less than $500,000.00.  This amount will continue to increase on a daily basis until Defendant GTU rectifies the false information and defamatory comments elicited and apologizes for its reckless and destructive broadcasting practice.

25

78.  The Plaintiffs reserve the right to amend the present cause of action as circumstances may warrant.

## VII. **PRAYER FOR RELIEF**

79.  Plaintiffs respectfully request from this Honorable Court:

A.  That in light of the solemn constitutional rights involved in this case to declare the respective rights and duties of the parties in this matter and that the matter concerning the applicability of presumptions in defamatory cases be certified to the Supreme Court of Puerto Rico through a Writ of Certification prior to the final adjudication of all claims brought before Honorable Court;

B.  Award an amount of no less than $500,000.00 to each of the Plaintiffs (Plaintiff Rolón and Plaintiff Ortega).  This amount will continue to increase on a daily basis until Defendant GTU rectifies the false information and defamatory comments elicited and publicly apologizes for its reckless and destructive broadcasting practice;

C.  Award Plaintiffs other compensatory damages in an amount to be determined by the trier of fact as sufficient to compensate the Plaintiffs for the damages alleged in this Complaint;

D.  Award Plaintiffs' attorney's fees and costs incurred; and,

E.  Grant Plaintiffs any and all other relief to which they may be justly entitled.

## VIII. **JURY DEMAND**

80.  The Plaintiffs demand a trial by jury on any and all issues triable by Jury.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico this 20th day of October 2010.

**CASTELLANOS & CASTELLANOS LAW FIRM**
161 Calle San Jorge
Suite # 401
San Juan, PR  00911
Tel. (787) 641-8447
Fax.  (787) 641-84161


//S//
**ALFREDO A. CASTELLANOS**
USDC-PR 208005


//S//
**RAÚL E. BANDAS**
USDC-PR 207809